LEONARD LATO, ESQ.

35 ARKAY DRIVE, SUITE 200
HAUPPAUGE, NY 11788
_____

TEL: (631) 655-5008
FAX: (631) 300-4380

EMAIL: leonardlato@yahoo.com

December 16, 2012

The Honorable Barbara S. Jones
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:    *United States v. Cosmin Merca*
                 1:12-CR-113-BSJ-3

Dear Judge Jones:

     I represent the defendant Cosmin Merca and write in connection with Merca's sentencing, which is scheduled for 2 p.m. on December 19. There are several minor errors in the presentence investigation report ("PSR"). What is more important is that four persons have written letters--letters that I summarize below--in support of a person they know to be a good man. I request that the Court, after considering the Sentencing Guidelines range of 33 to 41 months, impose a non-Guidelines sentence of 24 months.

**PSR Errors**

     The PSR's cover page lists a docket number containing an incorrect suffix. The Probation Department states that the docket number for Cosmin Merca is S1-12-CR-113-*01*. The correct suffix is *03*. Merca's codefendant Laurentiu Iulian Bulat has a docket number that ends in "01." (Docket Sheet for 1:12-CR-113-BSJ.)

     In the offense-conduct section, paragraph 8 states that Merca pleaded guilty before Your Honor. He did not. He pleaded guilty before Magistrate Judge Gabriel Gorenstein. (Docket Sheet, unnumbered entries on July 25, 2012.) The Probation Department made a similar error in paragraph 10, where it stated that codefendant Richard Merca pleaded guilty before the Court. He, too, pleaded guilty before Magistrate Judge Gorenstein. (Docket Sheet for Richard Merca, unnumbered entries on Sep. 20, 2012.)

     In the criminal-history section, the Probation Department asserts that, in the State of Illinois, Cosmin Merca has accumulated eight adult criminal convictions. (PSR paras. 43-52.) This is untrue. Seven of the convictions were for noncriminal traffic offenses. (PSR paras. 45-

51.)  Only the 2011 misdemeanor conviction for attempted use of a scanning device was for "a crime."

There are two other minor errors in the criminal-history section.  Paragraph 55 states that Merca was 25 years old when he committed a forgery in New York on January 18, 2012.  Merca was 26 years old.  And Merca did not commit the crime on that date, as alleged in paragraph 56.  He committed the crime prior to that date and was arrested on January 18.

The criminal-history section also contains one omission that could lead a reasonable person to infer that Merca has a pending New York State charge in Nassau County.  According to paragraph 59, Merca was arrested on July 22, 2011, for grand larceny in the second degree, but as of January 18, 2012, there was "no public record."  The reason that there was no public record, and the reason that there *is* no public record, stems from the charge having been dismissed and the record having been sealed pursuant to Section 160.50 of the New York Criminal Procedure Law. (Ex. 1, N.Y. State Unified Court System, WebCrims, Dec. 16, 2012.)

In the offender-characteristics section, the Probation Department correctly states that "Merca said that . . . he [is] a U.S. citizen."  The Probation Department contends, however, that Merca "has not provided any documentation to confirm that status" and that, "[a]ccording to Immigration and Customs Enforcement (ICE)[,] the defendant is legally residing in the United States . . . under [an] alien registration number."  (PSR para. 65.)  Merca *is* a U.S. citizen.  And the reason that he has not provided the Probation Department with a copy of his U.S. passport or with a copy of his U.S. naturalization certificate is because the Probation Department has not asked for proof of citizenship.  A copy of Merca's U.S. passport (Ex. 2) is attached.[1]

The Probation Department states that Merca and his wife, Lavinia, have two children: Olivia, age 3, and Timothy, "almost 2."  (PSR para. 67.)  Timothy is 20 months old.  Olivia is not even close to "3."  Indeed, she was born during the pendency of this case and is only 6 months old.  The Probation Department should not have made this error.  Cosmin Merca knows the ages of his children.  And the Probation Department's contention that it was unable to contact Lavinia because "the cell phone number provided by the defendant was a wrong number" (PSR para. 68), is underwhelming.  It is questionable whether Cosmin provided "a wrong number."  What is not questionable is the Probation Department's failure to notify Cosmin or me of the purported phone-number roadblock.

In paragraph 73, the Probation Department states that, when it interviewed Merca about substance abuse, "[Merca] declined to discuss any history of use of illegal drugs or alcohol."  The Probation Department fails to mention that I was present at the time and that I advised Merca not to discuss whether he had such a history.  Paragraph 73 should be amended to open with the dependent clause, "On advice of counsel."

---

[1]  ICE needs an overhaul.  I recently completed a case in the Eastern District of New York in which ICE contended that the defendant was residing in the United States illegally.  Prior to sentencing, the undersigned confronted ICE with a copy of the defendant's passport, and ICE acknowledged its error.  Nevertheless, about one month prior to the defendant's scheduled release from prison, ICE placed an immigration detainer on the defendant.  Once again the undersigned had to use the defendant's passport to refresh ICE's recollection.  ICE relented, and the Bureau of Prisons released the defendant at the conclusion of the defendant's imprisonment term.

Paragraphs 75 and 76, which summarize Merca's high school and college years, contain faulty information.  Paragraph 75 states that Merca entered high school in January 2001, withdrew in May 2005, re-entered in March 2009 and graduated in 2009.  But paragraph 76 states that Merca attended college between 2004 and 2006, several years *before* he had graduated high school.  It appears that Merca's assertion is the accurate one:  that he "graduated from [high] school in 2004."  (PSR para. 75.)

In paragraph 80, the Probation Department contends "that at the time the defendant was interviewed by [the] Pretrial Services Agency, he . . . reported $30,000 in stocks."  Neither Merca nor his wife, Lavinia, has ever owned *any* stocks, a fact that Lavinia confirmed when I spoke with her earlier today.  Perhaps Pretrial Services was confusing the $30,000 *liability* that the Mercas had with respect to "an auto loan for a 2010 Audi."  (PSR para. 80.)

In the sentencing-options section, the Probation Department states that, with respect to Count 3, which carries a maximum imprisonment term of 7.5 years, "The defendant is not eligible for probation because he is being sentenced at the same time to a term of imprisonment on [Counts 1 and 2.]  (PSR paras. 95-96.)  The Probation Department incorrectly sets forth the law in this area.  It is true, as the Probation Department states, that pursuant to 18 U.S.C. § 3561(a)(3), a court cannot impose a sentence of probation on one count if it imposes an imprisonment term on another count.  It is also true that, pursuant to 18 U.S.C. § 3561(a)(1), the Court cannot sentence Merca to probation on either Count One or on Count Two.  But just because the Court cannot sentence Merca to probation on the counts does not mean that the Court must sentence him to an imprisonment term.  The Court could, if it chose to do so, sentence Merca to concurrent periods of time served on Counts One and Two.  If the Court did so, the Court would then have the power to sentence Merca to a period of probation on Count Three.  Of course, this is probably an academic point:  Merca is neither expecting nor even asking for a sentence of time served on either Count One or on Count Two.[2]

**Sentencing Recommendation Errors**

According to the Probation Department, the Guidelines for supervised release on Counts One and Two call for a term of "[a]t least 2 to 5 years, per count."  (PSR 21.)  This is inaccurate and contrary to what the Probation Department accurately stated in PSR paragraph 93:  "The guideline range for a term of supervised release is at least two years but not more than five years, pursuant to § 5D1.2(a)(1)."

In its "Drug Risk Analysis," the Probation Department again omits that it was on advice of counsel that "[Merca] declined to discuss any histories of illegal drug and alcohol abuse." (PSR 23.)  Even worse, the Probation Department, in requesting special conditions of supervised release, seeks the following: "The defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether the defendant has *reverted* to using drugs or alcohol." (PSR 24) (emphasis added).  The Probation Department presents no evidence, and there is no evidence, that Merca has ever abused or has even used drugs or alcohol.  Thus, the Court should impose only the mandatory "one drug test within fifteen days of commencement of . . . supervised release." (PSR 22.)

---

[2]     The same error appears in the Probation Department's sentencing recommendation.  (PSR 21.)

Merca appreciates that the Probation Department "recommend[s] that a fine in this case be waived."  (PSR 24.)  But the Probation Department is wrong for repeating Pretrial's mistake that Merca "may have access to some significant amount of money."  (PSR 24.)

**Letters in Support**

Emmanuel Tepes writes that he is "an acquaintance of Cosmin Merca" who has known Merca "for approximately six years."  Tepes's relationship with Merca began when they were brass-instrument players at a Chicago church.  Tepes writes that he was inspired by Merca's "positive and cheerful personality" and "was sad to find out . . . what brought [Merca to] where he is now.  Tepes writes:

> I see from the letters that we have been writing back and forth[] that Cosmin is very sorr[y] for the poor choice[s] he made.  He admits that he was misle[d] by the glamour of life . . . .
>
> . . . Please, give Cosmin a chance to show his change of heart.  For the sake of his young family[,] his wife and two children[,] with the youngest being a few months old.

(Ex. 3.)

Merca's parents, Daniel and Mariana Merca, write that Cosmin, their first child, was "born . . . in Romania, a Communist [c]ountry."  They describe "a very hard life" in Romania.  But they emigrated to the United States, and their lives turned around.  Cosmin's life also greatly improved, but he "still remembers a lot of things that happened there."  (Ex. 4.)

The Mercas write that Cosmin "was a good kid, [a] good follower in the church," a person who "helped other kids and t[aught] them to play an instrument," "and [that] people respected him for what he was doing for other children and poor families in church."  They also feel that, after Cosmin is released, "[H]e will be back in church teaching other kids and families that are in need."  (Ex. 4.)

Merca's wife, Lavinia Merca, writes that Cosmin's criminal activities stand in contrast to the caring man she has known.  According to Lavinia:

> When I first met Cosmin at the church we both attend, he was in charge of organizing volunteer groups for The Salvation Army, and he also play[ed] in the church brass band.  He is still passionate about doing good for The Salvation Army[.][3] . . . [W]hile . . . incarcerated he has [taken] courses from them.  He is [also] the person who always stops to help someone pulled over on

---

[3] While incarcerated at the Metropolitan Detention Center, Cosmin has received four Salvation Army certificates for his participation in Bible courses.  (Ex. 5)

4

    the side of the road[;] I have witnessed this numerous times. Last year he volunteered to help the city crew put up the holiday lights.

(Ex. 6.)

  Lavinia . . . ."understand[s] that there is punishment for the crime [that Cosmin] committed." But, she writes, the collateral consequences of Cosmin's incarceration have been tough on her and on her children. She writes:

> He is a great father to our son who was ten months old when Cosmin was taken into custody. I know he will be a great father to our daughter[,] who is six months old and [who] he only had the chance to see once. He . . . always took care of his parental duties.
>
>  I understand that there is punishment for the crime he committed[,] but keeping him incarcerated will not help him and will be hard on me. . . . He is missing out on raising his children, and he is frustrated that I have to do it by myself and he can't help. And it is hard on me and I am afraid that it is hard on the children[,] who are missing out on having their father.

(Ex. 6.)

**Conclusion**

  The good deeds that Merca has done, standing alone, are insufficient to call for a non-Guidelines' sentence. But an extended period of incarceration may crush Lavinia, Timothy and Olivia Merca. A sentence of 24 months should be enough to protect the public and promote respect for the law.

            Respectfully,

            *Leonard Lato*
            Leonard Lato

ec:  AUSA Rosemary Nidiry